THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, PROSECUTOR, v. CHARLES L. WEEKS AND SARAH KNECHT.

Argued February 24, 1904—Decided June 13, 1904.

Under the supplement of 1869 to the charter of the city of Newark (*Pamph. L.* 1869, *p.* 672, § 3), and the "Act relating to the change of grade of streets in cities of this state" (*Pamph. L.* 1889, *p.* 378), the damages to be awarded may include not only structural damage to buildings, but also the loss of rental value during the time such buildings are necessarily rendered untenantable pending the work of changing the grade of the street and the adjustment of the buildings to the new grade.

---

On *certiorari*.

Before Justices HENDRICKSON and PITNEY.

For the prosecutor, *Malcolm MacLear.*

For the defendant Charles L. Weeks, *Edward A. & William T. Day.*

For the defendant Sarah Knecht, *Riker & Riker.*

The opinion of the court was delivered by

PITNEY, J. This *certiorari* brings before us a report of the commissioners of assessment of the city of Newark, dated January 2d, 1904, awarding damages to the defendants, respectively, as owners of property abutting upon Mulberry street, by reason of a change of the grade of that street. It also brings up certain proceedings in the Essex Circuit Court touching the matter of the award. The change of grade was authorized by ordinance, adopted in May, 1901. The work was commenced on November 26th in that year and was completed April 14th, 1902. The defendants were severally the owners of lots fronting upon the street, each lot having thereon a building constructed prior to the alteration of the grade and occupied by tenants at the time the work was commenced. The change of grade was so material as to require each of the buildings to be substantially altered in order to make it tenantable thereafter. The commissioners at first made a report in which the awards to these defendants were limited to the actual structural damage done to the buildings without taking into consideration the loss of rental value caused by the enforced non-access to the property during the progress of the work of changing the grade and during the remodeling of the buildings, necessitated by that change. Upon this report coming before the Circuit Court for confirmation, objections were made by the defendants, and on the hearing of those objections, upon depositions taken for the purpose, that court set aside the report as to the objectors and ordered it back to the commissioners for revision and correc-

tion in such manner as to take into consideration the diminution in rental value occasioned during the progress of the work of changing the grade of the street and during the alteration of the buildings so as to make them conformable to the new grade. Thereupon the commissioners made a new report in compliance with the order of the Circuit Court, and it is this report that is now before us. The reasons filed for reversal, however, attack only the order of the Circuit Court, setting aside the former report and referring it back to the commissioners for revision.

The controversy relates simply to the basis upon which the damages should be awarded, the prosecutor claiming that the award must be limited to the damage done to the buildings—what is called "actual structural damage"—without allowance of anything for the loss of possession or rent of the buildings during the progress of the work of changing the grade or during the time taken to adjust the buildings to the new grade.

In order to determine this controversy a review of the legislation upon the subject becomes necessary. It is entirely well established that there is no common law liability resting upon a municipality to pay damages or make compensation to abutting owners for changes lawfully made in the grades of streets. *Clark* v. *Elizabeth, 32 Vroom 565, 578, 582, 590,* &c. See, also, *Plum* v. *Morris Canal Co., 2 Stock. 256, 260; Reock* v. *Mayor and Council of Newark, 4 Vroom 129, 131; State, Vanatta,* v. *Morristown, 5 Id. 445, 448; Citizens' Coach Co.* v. *Camden Horse Railroad Co., 6 Stew. Eq. 267,* 276. Nor is there in this state any constitutional right on the part of the landowner to such compensation. The whole matter rests in legislation.

The first general act upon the subject is found in *Pamph. L.* 1858, *p.* 415, and is embodied in the General Road law of 1874. *Gen. Stat., p.* 2820, § 70. This statute gives an action upon the case to any person owning a house or other building standing upon any street or highway, the grade whereof shall be, or shall have been, altered by virtue of the ordinance, reso-

lution or other proceeding of the legislative authority of any city, borough or town corporate, to recover all damages which such owner shall suffer by reason of the altering of any such grade. But the act by its terms is made inapplicable to any city, town or borough whose charter, or any supplement thereto, provides, or shall provide, for assessing and paying compensation to persons injured by the making of grades established or to be established. The same act requires that the damages paid to the owners shall be assessed upon the lands and real estate benefited thereby in proportion to the benefits received. At the time of the passage of the act of 1858 the revised charter of Newark was in force (*Pamph. L. 1857, p.* 116), which contained no provision for assessing and paying compensation to persons injured by the making of grades established or to be established; but by a supplement to that charter, enacted in 1866 (*Pamph. L., p.* 571), it was provided that whenever the common council of the city should establish, or change, or alter the grade of any street, they should make compensation to owners of property "for any actual damages caused by establishing, or altering, or changing such grade;" the proceedings for estimating the damages and for the assessment thereof upon the owners of the property benefited to be taken in the manner provided by law in cases of laying out streets, &c., in that city. This reference was to sections 98–103 of the charter (*Pamph. L.* 1857, *p.* 163), which provided that the award should be made by five commissioners, to be appointed by the common council, with an appeal from the award of commissioners to the Supreme Court and a trial by jury in that court.

By a further supplement (*Pamph. L.* 1868, *p.* 793) the right to compensation was limited to cases of change or alteration of a grade previously established by due authority. And in the following year (*Pamph. L.* 1869, *p.* 672, § 3) it was enacted that the supplements of 1866 and 1868 "shall be construed so that the damages to be awarded for changing any grade in said city shall be measured according to the general law of the state, and shall not be awarded

to any owner of lands affected by the alteration of any grade except in cases where a house or other building was erected upon lands in question at the time of such alteration; and when damages are awarded they shall be those which such owner of said house or building has suffered or shall suffer by reason of such alteration."

Finally, by a general act of 1889, entitled "An act relating to the change of grade of streets in cities of this state" (*Pamph. L.* 1889, *p.* 378) it was declared "that where any city of this state has power to change the grade of any street, or part of a street, upon which any house or other building stands or is erected, it shall be lawful for the municipal authorities in any such city, through its proper officers, to make, or cause to be made, the proper award for damages, if any, ensuing or arising to the owner or owners of any such house or other building standing and erected upon any such street or part of a street, the grade whereof is changed as aforesaid." The same act provides for an assessment of the damages upon the property benefited in proportion to the benefits "by such municipal authorities through its proper officers as aforesaid." The suggestion that this act might be construed as merely regulative of procedure, substituting a new method of assessing the damages in the place of the suit provided for by the act of 1858, was overruled by the Court of Errors and Appeals in *Clark* v. *Elizabeth,* 32 *Vroom* 565 (at *p.* 580). In that case it was held that the act of 1889 is mandatory upon cities that were not previously liable in damages for changes in the grades of streets. Nevertheless, we think that regard may be had to previous legislation upon the subject in the effort to ascertain what shall be, within the meaning of the act of 1889, "the proper award for damages."

The act of 1858 says that "all damages which such owner shall suffer by reason of the altering of any such grade" may be recovered. The supplement of 1866 to the charter of Newark, which awarded damages to the landowner whether his lands were improved or not, used this phrase: "Compensation to owners of property for any actual damages caused

by establishing, or altering, or changing such grade." The supplement of 1868 repeated this language, save the omission of the word "establishing." The supplement of 1869 declared that the damages should be "measured according to the general law of the state and not awarded to any owner of lands affected by the alteration of grade except in cases where a house or other building was erected upon the lands in question at the time of such alteration; and when damages are awarded they shall be those which such owner of said house or building has suffered or shall suffer by reason of such alteration." The act of 1889 contains an express repealer of inconsistent legislation; but there is nothing in that act, so far as we perceive, that is inconsistent with the measure of damages prescribed by the supplement of 1869 to the charter of Newark.

It remains to apply that measure to the case in hand. No embarrassment arises out of the consideration of benefits received by the properties in question, for the commissioners of assessment distinctly certify that there were no lands peculiarly benefited by the change of grade.

The damages under consideration are not allowed as compensation for a wrongful act. Neither, on the other hand, are they awarded in obedience to any constitutional mandate. In our view the legislative scheme treats such changes of grade as practically, though not legally, imposing an additional servitude upon the abutting property. For the purpose of admeasuring the damages it deals with the change of grade as if it were a taking of the right to impose this additional servitude, subject to making just compensation to the owner of abutting land.

Counsel for the prosecutor, in view of the fact that the legislature has allowed damages where a house or other building stands upon the street and has allowed none where the land is vacant, argues that it was the legislative intent to confine the award to the damage done to the house or other building. A review of the legislation upon the subject convinces us, however, that the legislature, in conferring this

right to compensation,. ignored vacant lands chiefly because the damage to unimproved property is more speculative and altogether less serious than that which accrues where buildings have already been constructed. An additional reason doubtless was that to open these claims to the owners of unimproved lands would have practically destroyed the hope of street improvements in the outlying sections of the several municipalities by reason of the prohibitory claims for damages that would have been incurred. The central thought seems to have been that he who has built upon his lot has committed himself permanently and at substantial expense to its development in reliance upon the grade of the street already existing, so that to him it is peculiarly oppressive to afterwards change the grade. Thus, while the supplement of 1866 to the charter of Newark allowed compensation to the owners of property, improved or unimproved, whenever the common council should establish or change a street grade, it was deemed wise, in 1868, to eliminate damages accruing upon the original establishment of a grade by the city authorities, and in 1869 by eliminating damages to vacant lots. But the damage to the house or building is not allowed on the theory that it is property separate from the lot on which it stands. It is allowed to the owner of the lands, who, in ordinary cases, is the owner of the building because it stands upon the lands. It is entirely clear, we think, that the damages allowable must take into consideration the entire property and not merely the structural damage to the building. Such, we believe, is the construction uniformly given to the general act of 1858, whose language in this respect is not dissimilar to the acts now in question. Under the general law damages have been adjudged to the owners of improved lands for changes in the street grades, although the buildings were not structurally affected in the least. In the case of *Vannatta* v. *Morristown,* referred to in the *certiorari* case between the same parties, 5 *Vroom* 445 (at *pp.* 447, 454), the damage done was not to the building, but to the lot, access thereto being rendered more difficult by the change of grade, yet a recovery was had under the act of 1858.

Just compensation requires that the landowner shall be made whole for the damage directly resulting to the property in consequence of the public work. In ordinary condemnation cases, where the award of compensation precedes the taking, the courts, of necessity, resort to the fiction of a supposed purchaser and seller, willing but not compelled to negotiate on fair terms, and reaching a fair agreement as to the value of the property as it stands before the taking and the lesser value as it will be after the proposed taking. The result is the difference in market value. *Packard* v. *Bergen Neck Railroad Co.,* 25 *Vroom* 553, 560; *Butler Rubber Co.* v. *Newark,* 32 *Id.* 32, 52; *Ingersoll* v. *Newton,* 15 *Dick. Ch. Rep.* 399. The rule results, at best, in approximation to accuracy, for the judicial tribunal, like the supposed purchaser and seller, must be to some extent in the dark as to what the future may develop.

Where the ascertainment of compensation is postponed until after the taking, questions sometimes arise whether the appraisal is to relate to the time of the taking or to the time of the adjudication, interest being sometimes allowed in consideration of the loss of rental value in the *interim. Metler* v. *Easton and Amboy Railroad Co.,* 8 *Vroom* 222. But where the time intervening between the taking and the ascertainment of compensation has, by the progress of events, furnished additional data for determining with accuracy what is just compensation, we deem it clear that the judicial tribunal may lay hold of the information thus placed at its disposal. To that extent, instead of relying on what a prudent purchaser and a prudent seller would probably foresee, the court is enabled to benefit by the actual results of experience, and thereby to reach a more just result.

In any point of view, it will be unjust, in a case like the present, to ignore the damage to the property that intervenes between the time of the commencement of the public improvement and the later time at which the award of compensation is made. Prudent persons, if bargaining about the property at the beginning, would not fail to take into

consideration two questions—*first,* what will it cost to adapt the building to the new grade of the street; *second,* how long and to what extent will the building be untenantable by reason of the changes thus necessitated.      Supposing that, from abundance of caution, the parties thus bargaining should agree on the following basis:    The price to be the market price of the property before the proposed change of grade, less what it would cost to adapt the building to the new grade, including the loss of rental value in the meantime; the ascertainment of these items to be postponed until the work was complete, and to be then deducted from the agreed price.    They would thereby place the matter of compensation precisely in the situation in which it was presented to the commissioners of assessment in the present case.    In the Metler case, above cited, this court said that the allowance of interest from the time of the commissioners' report until the conclusion of the proceedings on appeal may be controlled by the circumstances of the particular case.    "If the owner has not been disturbed in the possession, and has had a profitable use of the premises, or has received the rents from them pending the appeal, these circumstances should be taken into account and the interest abated accordingly."

Upon the whole, therefore, it was, in our opinion, proper for the commissioners of assessment in the present case to take into consideration not merely the structural damage done to the buildings of the defendants, but also the loss of rental value during the time that the buildings were rendered untenantable by the progress of the work of changing the grade and by the remodeling of the buildings necessitated by that change.

We observe that the final report indicates that in the case of the defendant Weeks the commissioners allowed loss of rentals from the completion of the change of grade until the making of the report, a period of more than eighteen months, during which time no effort was made by the owner to put his building in tenantable condition, and that it would require not more than four months to put it in such condition.    We

do not intend to sanction an allowance for loss of rentals beyond such time as was reasonably necessary to put the building in tenantable condition. Doubtless the excessive allowance for rentals to Weeks (if in fact it be excessive) arose through inadvertence on the part of the commissioners, for their report clearly shows that they were proceeding under instructions from the Circuit Court, that limited the damages for loss of rentals to such as accrued while the change of the street grade was being made and while the premises were being altered so as to conform to the new grade. No point seems to have been made before the commissioners about the effect of Weeks' delay in undertaking the alterations.

Nor has the issue in this court been framed in such a manner as to enable us to deal with the matter, and for this reason we do not feel at liberty to deal with it. As already mentioned, while the writ of *certiorari* brings up the final report of the commissioners, with the proceedings in the Essex Circuit pertaining thereto, the prosecutor, in terms, prays only for reversal of the order by which the Circuit Court set aside the former report and referred the matter back to the commissioners, with instructions to take into account the loss of rentals. The reasons for reversal and the argument made before us were addressed solely to the proposition that the allowance must be confined to structural damage to the buildings, without allowance of anything for loss of possession or rent during the actual progress of the work of changing the grade, or during the time necessarily taken to adjust the building to the new grade. No testimony was taken in this court to show what time would reasonably be required for remodeling the building, and we could hardly accept the recitals of the award as conclusive upon that point. Indeed, the defendants have not been called upon to meet such an issue. The present proceedings being manifestly intended to test solely the general question whether anything should be allowed for loss of rentals, we have dealt with it accordingly.

The order and report under review will be affirmed, with costs.